UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

CARLOS MARIN,

                Petitioner,

    -against-

RAYMOND J. CUNNINGHAM,

                Respondent.

------------------------------------------------------------- X

COGAN, District Judge.

**MEMORANDUM
DECISION AND ORDER**

05-CV-32⁴5 (BMC)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ ★

BROOKLYN OFFICE

      I assume familiarity with the facts underlying this petition for a writ of habeas corpus under 28 U.S.C. §2254. The petition sets forth seven points for review: (1) petitioner was denied counsel before appearing in a lineup; (2) two witnesses who picked him out of a lineup had seen his wanted poster in the police station, rendering the lineup inherently suggestive; (3) the two witnesses viewed petitioner simultaneously, again rendering it inherently suggestive; (4) police testimony at trial concerning the lineup constituted improper bolstering; (5) the prosecutor made improper comments in closing argument regarding petitioner's tattoo, which used his nickname "Outlaw"; (6) improper charge to the jury that defendant's mother was an interested witness; and (7) ineffective assistance of trial counsel for failing to object to the prosecutor's closing argument and for acquiescing to the trial court's instruction that trial counsel examine defendant's body for tattoos and report his findings to the trial court.

      In addition, apparently because respondent argues in his opposition to the petition that points 1 through 3 above are unexhausted and procedurally barred, and because the

Appellate Division held that points 4 through 6 above were unpreserved, petitioner may

be suggesting in his reply brief, although it is not clearly articulated, that his ineffective

assistance of trial counsel claim should be expanded for failure to preserve points 4

through 6. He also may be asserting in his reply brief an ineffective assistance of

appellate counsel claim.

I will address each of these points seriatim.

## I. Lineup Points (1 through 3)

Prior to bringing a petition for habeas corpus pursuant to 28 U.S.C. § 2254,

petitioner must exhaust the remedies available in state court or demonstrate that "there is

an absence of available State corrective process [or] [that] circumstances exist that render

such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). To

have exhausted claims in state court, petitioner must have "fairly presented" each federal

claim to the state's highest court. Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509

(1971).

Respondent is correct that petitioner failed to raise these points on direct appeal,

and they are therefore unexhausted. Moreover, the Second Circuit has recognized that to

require exhaustion at this stage would be futile. These claims are based upon the trial

record, as opposed to matters outside the trial record, and petitioner could have raised

them on direct appeal. If petitioner attempted to raise them now in a collateral

proceeding, the New York state courts would hold them procedurally barred. N.Y.

C.P.L. §440.10(2)(c) (McKinney 1994) (no collateral review if claims could have been

raised on direct appeal). Under these circumstances, the federal courts treat the claims as

procedurally defaulted. See Bossett v. Walker, 41 F.3d 825, 828-29 (2d Cir. 1994).

2

A federal court can still address a claim that is procedurally defaulted only if the petitioner shows cause for the default and prejudice or that manifest injustice would result. Id. (citing Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497 (1977). Other than applying these labels, petitioner has not set forth any facts that would satisfy this standard.

In addition, petitioner has not claimed and cannot demonstrate prejudice. Not only was the evidence against him overwhelming, but none of his arguments regarding the lineup have merit. First, petitioner had no right to counsel at the time he appeared in the lineup because the State had not yet commenced formal adversarial proceedings against him. He contends that the lineup occurred at a "critical" time for him, but the Supreme Court rejects that position. See United States v. Gouveia, 467 U.S. 180, 104 S.Ct. 2292 (1984).

Second, I find no issue with regard to the way the lineups were conducted. As far as I can tell from the record, and respondent's brief is no more helpful than petitioner's on this point, this issue involves not just the lineup itself, but the identification made prior to it by the victims who fortuitously observed a wanted poster with petitioner's likeness at the police station. As to the poster, petitioner asserts that this was unduly suggestive as defined by some unspecified provision of "the New York Constitution." However, he concedes that this prohibition applies only when the police arrange the suggestive procedure, and that is of course true under either federal or state law. Here, the suppression court found as a matter of fact following an evidentiary hearing that the witnesses' observation of petitioner on a "wanted" poster prior to the lineup was without involvement of the authorities. Unfortunately for petitioner, the victims saw the poster

on a bulletin board when they came to the police station to look at computer photo arrays. The Court presumes that the suppression court's factual finding that the police were not involved in the fortuitous identification was correct under 28 U.S.C. §2254(e)(1), and nothing in the record rebuts that presumption. As to the lineup itself, the police followed standard procedure. The identifications satisfied all of the indicia of reliability required under Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243 (1977) and Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375 (1972).

Finally, petitioner's argument that the two victims should not have viewed his lineup at the same time is factually incorrect. The suppression hearing record is clear that they viewed the lineup separately. They did not encounter each other after the first victim identified petitioner, and only reunited when the second victim had also identified petitioner.

It is often the case for a habeas court in determining whether there might be a "prejudice" exception to a petitioner's procedural default to undertake at least some consideration of the merits. Whether viewed in the context of a procedural bar or by an examination of the merits, petitioner's lineup claims fail.

## II. Trial Error Points (4 through 6)

None of petitioner's bolstering, summation, or jury charge claims raised here were preserved for appeal, as petitioner made no objection on the record at trial. The Appellate Division rejected these claims as "unpreserved for appellate review" and also found that "[i]n any event, any alleged errors were harmless in light of the overwhelming evidence of the defendant's guilt." People v. Marin, 7 A.D.3d 814, 815, 776 N.Y.S.2d 888 (2d Dep't 2004), leave to app. den., 3 N.Y.3d 677, 784 N.Y.S.2d 16 (2004). The

petitioner failed to fulfill New York's contemporaneous objection requirement which is an independent and adequate ground for affirming the conviction. See Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546 (1991). The Second Circuit has recognized that New York's contemporaneous objection rule, N.Y. C.P.L. §470.05(2), is an adequate state law ground for decision. See Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994). These claims are therefore denied.

## III. Ineffective Assistance of Counsel

Petitioner barely raised his claim of ineffective assistance of trial counsel in his Appellate Division brief. It is not reflected in the brief's point headings or table of contents. Instead, at the end of his discussion of the Trial Error Points that are identified as unpreserved above, petitioner added one paragraph that began: "In the event the Court declines to reach these claims in the interest of justice, it should nonetheless reverse, on the grounds [sic] that appellant was denied the effective assistance of counsel." The paragraph cites Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984), which is sufficient to preserve the claim for federal habeas purposes. Notwithstanding this practically hidden reference to the ineffective assistance claim, the Appellate Division addressed it, holding that petitioner's "remaining contention is without merit." People v. Marin, supra, 7 A.D.3d at 815, 776 N.Y.S.2d at 888.

The Court should also note that in the instant proceeding, petitioner's ineffective assistance claim may not be as broad as his appellate counsel asserted it to be before the Appellate Division. The only ineffective assistance claim raised in this petition concerned his trial counsel's treatment of the "Outlaw" tattoo (Point 5 here). The single paragraph in his Appellate Division brief, although conclusory, arguably asserted that

5

trial counsel was ineffective for not preserving the points discussed above that this Court

has found procedurally barred. Because petitioner is *pro se*, I will deem his petition

amended to assert the broader range of ineffective assistance points that his state

appellate lawyer may have attempted to raise in the Appellate Division.

Since the Appellate Division disposed of the ineffective assistance claim on the

merits, its decision is entitled to deference under 28 U.S.C. §2254(d). The Court is next

required to determine whether the Appellate Division's decision constitutes an

unreasonable application of Strickland. See Bell v. Cone, 535 U.S. 685, 698-99, 122

S.Ct. 1843 (2002).

To succeed on his claim under Strickland, petitioner would have to show that his

lawyer's conduct "so undermined the proper functioning of the adversarial process" that

the process "cannot be relied on as having produced a just result." 466 U.S. at 686, 104

S.Ct. at 2064. Specifically, petitioner must show that "(1) his counsel's performance fell

below an objective standard of reasonableness under prevailing professional norms and

(2) he was prejudiced by counsel's deficient performance." Jones v. Conway, 442

F.Supp.2d 113, 124 (S.D.N.Y. 2006). To meet the first prong, petitioner must overcome

a strong presumption that the assistance was adequate. Strickland, 466 U.S. at 686, 104

S.Ct. at 2064. As to the second prong, "[t]o demonstrate prejudice, a petitioner must

prove that, but for counsel's errors, there is a reasonable probability that the outcome of

the proceeding would have been different." Jones, 442 F.Supp.2d at 124. A court must

consider each alleged error by the totality of the circumstances, Diaz v. Herbert, 317

F.Supp.2d 462, 471 (S.D.N.Y. 2004), and measure it against the weight of the evidence

as a whole, including the attorney's active and meaningful conduct during the trial. See

Brown v. Brown, No. 05 Civ. 10434, 2006 U.S. Dist. LEXIS 85306 *56 (S.D.N.Y. Nov. 27, 2006) (explaining that counsel errors must be considered in the aggregate, giving "a heavy measure of deference to counsel's judgments") (quoting Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

Under this standard, petitioner's claim of ineffective assistance cannot succeed. The overriding problem is that the evidence at trial was so overwhelmingly against him. The State had four eye witnesses, three of whom positively identified him as their assailant (the fourth had been too scared to look him in the face during the attack). The three witnesses saw him face-to-face in broad daylight. They had no prior relationship with him and no motive to fabricate testimony. Two of the witnesses were young and sympathetic, and one cried on the stand when she had to recount what had occurred. Those two witnesses described petitioner as driving a burgundy car, which matched the color of the car in which petitioner was arrested. Even though there were two separate robberies (two victims in each), the victims in both incidents independently described petitioner as using the same physical motion to display the gun in his waistband to them.

Against this evidence, petitioner's trial counsel did not have many options. On the other hand, the petitioner had the option to accept an offer from the suppression hearing judge that would have sentenced petitioner for five years, but he rejected this offer. Instead, the petitioner received an aggregate of 10 years after he was convicted. Defense counsel attempted to raise a defense of mistaken defense by pointing out that petitioner had a prominent and large tattoo on his arm that said "Outlaw" that each eyewitness acknowledged never having seen despite that counsel was able to establish its existence at the time of both robberies.

Petitioner criticizes his counsel for advancing this strategy, but offers no alternative to it that his trial counsel might have adopted. It was reasonable for defense counsel to argue that at least one of four victims whom petitioner had robbed would have noticed a prominent tattoo of the word "Outlaw" on the arm of the robber. All it would have taken was one juror to accept this position. Yhe strategy was certainly not constitutionally infirm.

The prosecutor's reference to the tattoo in closing argument was more melodramatic than prejudicial, and the decision by defense counsel not to object was again strategic. Objections during closing argument often present a judgment call. The objection itself may call attention to the challenged remark, and because the trial judge has broad discretion to determine whether a particular remark is unfair or whether a series of remarks cross the line, there is often a risk that the objection will be overruled, highlighting the remark further and perhaps validating it in some juror's mind. Petitioner was not deprived of effective assistance of counsel by this decision not to object. Here, the prosecutor's personalization of the "Outlaw" tattoo to petitioner was just a set of oratorical bookends that surrounded his main point, the reliability of the eyewitness testimony.

As to the other two points to which petitioner contends his trial counsel should have objected, the bolstering point and the mother-as-interested-witness point, the Appellate Division rejected those claims on the merits, even though it found that they were procedurally barred. It therefore follows *ipso facto* that trial counsel was not ineffective for failing to preserve these claims, because the Appellate Division ruled as if they had been preserved.

8

Nor was petitioner prejudiced by the failure to preserve them for review in this Court. The bolstering claim is purely an issue of state law that does not warrant habeas relief in federal court. See Minigan v. Donnelly, No. 01-CV-0026A, 2007 WL 542137, *12 (W.D.N.Y. 2007) (citing cases). This finding is particularly true since the witnesses whose identifications were "bolstered" testified at trial.

The same is true for the interested witness jury charge. A state trial court's jury instructions are ordinarily not a matter that raises a federal question, but rather, the propriety of such instructions is a matter of state law. See Cupp v. Naughten, 414 U.S. 141, 146, 94 S.Ct. 396 (1973). A federal court can only grant habeas relief on a defective jury charge if it "so infected the entire trial that the resulting conviction violates due process." Id. at 147, 94 S.Ct. at 400. That situation did not occur here. The jury would obviously recognize the interest of a defendant's mother based on the general witness credibility instruction, if it could not figure that out even without a jury instruction. The instruction as to petitioner's mother's testimony thus only confirmed what it already knew.

Moreover, this issue is a red-herring. Petitioner's mother did not present an alibi for him; she was called only to confirm that he had the tattoo at the time of the robberies. As noted above, this was to support the defense of mistaken identity because none of the witnesses had seen the tattoo. But the prosecutor conceded in closing argument that petitioner had the tattoo at the time of the attacks, and thus the interested witness instruction was entirely superfluous.

I find that any errors committed by trial counsel were minimal and insubstantial, if errors at all, and the Appellate Division was not unreasonable in concluding that they

did not affect the outcome of this trial. These alleged errors were not "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," <u>Strickland</u>, 466 U.S. at 687, 104 S.Ct. at 2064, especially in light of the overwhelming evidence against petitioner.

Finally, to the extent that petitioner is seeking to amend his petition to assert an unexhausted claim of ineffective assistance of appellate counsel for failing to raise Points 1 through 3 above, that claim is wholly without merit. "In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." <u>Clark v. Stinson</u>, 214 F.3d 315, 322 (2d Cir. 2000). The Court discussed above why those claims have no merit and thus appellate counsel could not have been ineffective for failing to raise them.

## CONCLUSION

The petition is denied. The Clerk is directed to enter judgment in favor of respondent. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. 28 U.S.C. §2253(c)(2).

**SO ORDERED.**

Dated: Brooklyn, New York
      August 24, 2007

/S/ Signed by Judge Brian M. Cogan
U.S.D.J.

10